IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| vs. | ) Criminal Action No. 18-00026-KD-B |
| | ) |
| JOHN SPINNER, | ) |
| | ) |
| Defendant. | ) |

**ORDER**

This action is before the Court on Defendant John Spinner's Second Motion for Sentence Reduction under 18 U.S.C. § 2582(c)(1)(A) (doc. 96), release plan (doc. 96-1) the Warden's denial letter and notice regarding administrative remedies (doc. 96-2), letter in support (doc. 97) the United States' response (doc. 101), and Spinner's medical records (doc. 103, under seal). Upon consideration, and for the reasons set forth herein, the Motion is DENIED.[1]

I. Background

In February 2018, Spinner and his sister Valeria Brown were indicted for the offenses of Hobbs Act robbery in violation of 18 U.S.C. § 1951 (Count 1) and discharging a firearm in relation to a crime of violence in violation of 18 U.S.C. § 924(c) (Count 2) (doc.1). Spinner pled guilty to both counts (doc. 36). On August 3, 2018, Spinner was sentenced to a term of 1 day as to Count 1 and 120 months, consecutive, as to Count 2, for a total term of 120 months and 1 day.

---

[1] Spinner also moves the Court to appoint counsel (doc. 96, p. 6). Movant's request for appointment of counsel is denied. There is no constitutional or statutory right to counsel for "motions filed under § 3582; therefore, 'the decision to appoint an attorney is left to the discretion of the district court.'" United States v. Reese, No. 2:12-CR-87-WKW, 2020 WL 3621316, at *1 (M.D. Ala. July 2, 2020) (quoting United States v. Webb, 565 F.3d 789, 792 (11th Cir. 2009)) (addressing the right to counsel in the context of a § 3582(c)(2) motion). The Court finds that appointment of counsel is not necessary. Spinner has shown the ability to effectively set forth the facts, claims and argument and otherwise prosecute this action.

Spinner is presently incarcerated at the Federal Medical Center in Springfield, Missouri. His estimated release date is September 9, 2026.

> According to the factual resume, Spinner admitted to the following offense conduct:
>
> On October 10, 2016, at 0000 hours, two black males entered the Walmart, located at 2500 Dawes Road, Mobile, Alabama, armed with handguns. The two suspects held victims at gunpoint at the self-checkout register and took the deposit bags. The two suspects then took the cash cart that was currently being used to collect deposits from the registers. The two suspects wheeled out the cart containing the deposits and fled in a red Ford pickup truck.
>
> Prior to the two suspects entering the Walmart, the defendants, Valeria Brown and John Spinner, entered the Walmart. The plan for the robbery was that Valeria Brown and John Spinner, who were, in fact, brother and sister, were to pose as a couple with an infant child who were simply customers in the Walmart store. While they were inside, Valeria Brown communicated to the two armed suspects via cell phone when it was clear for them to enter the Walmart and commence with the robbery. Once Valeria Brown gave the all clear to the two suspects, Valeria Brown and John Spinner left the store and waited outside for their two conspirators to complete the robbery.
>
> Valeria Brown and John Spinner waited in a white 1997 Nissan Altima . . . When the two armed suspects fled from the Walmart, they entered a red Ford pick-up truck. The two armed suspects then fled from the Walmart in the vehicle. John Spinner, while traveling in the white Nissan Altima with Valeria Brown, armed with a black .45 caliber semi-automatic pistol, noticed a car that John Spinner believed was following the other conspirators of the robbery. John Spinner discharged a firearm in an attempt to cause [a] possible witness to stop following the red Ford pickup truck with the two armed suspects.

(Doc. 36).

The Presentence Investigative Report indicates that Spinner had high blood pressure and kidney disease at the time of the offense. Spinner reported that his "kidneys failed in 2015, and that he has a scar on his left forearm from dialysis received at Springhill Medical Center in

---

Additionally, the claims are not factually and legally complex or exceptional such that appointment of counsel is warranted.

Mobile." (doc. 53, p. 9).  Spinner also reported he was "placed on disability in 2015 due to his kidney disease". (Id.)  The PSIR also includes the following: "Springhill Medical Center records indicate that on February 11, 2018, the defendant was diagnosed with 'chronic kidney disease stage 5, progressing to end-stage renal disease, on hemodialysis'" (Id.).

Spinner previously filed a motion for compassionate release (doc. 83).  The Court dismissed the motion without prejudice because Spinner had not shown that the Warden received his request for compassionate release and more than 30 days had lapsed or that he had exhausted his administrative remedies (doc. 91).

Spinner provided a copy of his medical records with his first motion.  He had been diagnosed with the following: Anemia, secondary hyperparathyroidism, essential (primary) hypertension, constipation, chronic kidney disease and dependence on renal dialysis (doc. 90, p. 4).  Spinner received three medications related to his dialysis.  On Monday, he received injections of Darbepoetin Alfa and Doxercalciferol, on Wednesday, he received injections of Ferric Gluconate and Doxercalciferol, and on Friday, he received an injection of Doxercalciferol. (Id., p. 7).  He also takes Furosemide, Lisinopril, Minoxidil, Sevelamer Carbonate, and Vitamin B, C and D, in tablet form, in varying daily dosages. (Id., p. 6-7); (doc. 96-1, p. 4) (adding Amlopine and Cholecalciferol).

With his second motion, Spinner indicates that he still takes these medications and continues with dialysis (doc. 96, p. 5).  He also reports that he tested positive for Covid-19 on October 27, 2020 (Id.).  The United States reports that Spinner's medical records show that his Covid-19 illness resolved and he was removed from isolation (doc. 103, p. 3, medical records dated November 12, 2020).

Spinner's inmate records indicate that he has been working in the prison cafeteria and taking self-improvement courses (doc. 89, p. 12; doc. 88, p. 3). Spinner's Medical Duty Status from December 7, 2020 indicates he was "cleared for food service" with "no restrictions" (doc. 103, p. 160).  His recent letter indicates that he is still working (doc. 97).

Spinner now provides a release plan to live with relatives who will help him obtain a cafeteria job or a commercial driver's license. Spinner also states that he is disabled and on Medicare, and therefore, will have access to health care if released. He states that his relatives and the three mothers of his three children will provide community support (doc. 96-1, p. 5).

II. Motion for Reduction of Sentence and/or Compassionate Release

A. Exhaustion of administrative remedies or lapse of 30 days

In relevant part, the compassionate release provision of 18 U.S.C. § 3582(c), as amended by § 603 of the First Step Act of 2018, provides that "the court . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment" after considering the [applicable] factors set forth in 18 U.S.C. § 3553(a)", if certain other conditions are met. 18 U.S.C. § 3582(c)(1)(A)(i); First Step Act of 2018, Pub. L. 115-391, § 603(b), 132 Stat. 5194, 5239.

Spinner submitted a copy of the Warden's denial of his request for the Warden to file a motion on his behalf. The denial is dated October 7, 2020 (doc. 96-2, p. 4).  If the Warden denied Spinner's request on October 7, 2020, it must have been submitted before that date.  Thus, more than 30 days lapsed between the Warden's receipt of the request and Spinner's filing his motion

4

on November 12, 2020.² The United States agrees that Spinner's motion is properly before the Court and acknowledges that Spinner has provided a copy of the Warden's decision dated October 7, 2020 (doc. 101).

    B. <u>Compassionate release</u>

Once a sentence is imposed, the "authority of a district court to modify an imprisonment sentence is narrowly limited by statute." <u>United States v. Phillips</u>, 597 F.3d 1190, 1194-95 (11th Cir. 2010); <u>United States v. Shaw</u>, 711 Fed. Appx. 552, 554-55 (11th Cir. 2017) (same). Generally, the "court may not modify a term of imprisonment once it has been imposed except" as set out in 18 U.S.C. § 3582(c). <u>See</u> <u>United States v. Pubien</u>, 805 Fed. Appx. 727, 730, (11th Cir. Feb. 25, 2020) (quoting 18 U.S.C. § 3582(c)). Title 18 U.S.C. § 3582(c)(1)(A)(i) provides for modification or reduction of a sentence based on extraordinary and compelling reasons <u>i.e.</u>, compassionate release.³

The compassionate release provision 18 U.S.C. § 3582(c)(1)(A)(i), as amended by the First Step Act, provides that the district court "upon motion of the defendant after the defendant" has met certain statutory prerequisites, <u>see supra</u>, ¶ A, "may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the [applicable] factors set forth in 18 U.S.C. § 3553(a)", if the district court finds that

---

² Spinner's motion was signed on November 12, 2020. Under the prison mailbox rule, an inmate's *pro se* motion is deemed filed on the date it is delivered to prison officials for mailing, and absent evidence to the contrary, the Court's presume that a movant delivered the motion to prison officials on the day it is signed. <u>Burke v. United States</u>, 762 Fed. Appx. 808, 809 (11th Cir. 2019).

³ Subparagraph (ii) provides for a reduction of sentence and release when "the defendant is at least 70 years of age, has served at least 30 years in prison" and other factors are met. 18 U.S.C. § 3582(c)(1)(A)(ii). Since Spinner is 37 years old, only subparagraph (i) could apply.

5

"extraordinary and compelling reasons warrant such a reduction" and the reduction is "consistent with applicable policy statements issued by the [United States] Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

"Extraordinary and compelling" reasons are not defined in the statute. Id.  Instead, Congress gave the Sentencing Commission the duty to promulgate general policy statements regarding sentence modifications pursuant to 18 U.S.C. § 3582(c)(1)(A) and stated that the Commission "shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t).  Congress also stated that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." Id.

The applicable Policy Statement is found at U.S.S.G. § 1B1.13. Before the First Step Act, the Sentencing Commission promulgated the following Policy Statement, which set forth in relevant part, as follows:

> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
>
> (1) (A) Extraordinary and compelling reasons warrant the reduction; . . .
>
> (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3) The reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13.[4]

The Application Notes to the Policy Statement includes four examples of extraordinary and compelling reasons to consider a reduction of sentence under § 3582(c)(1)(A). Spinner's medical conditions – dialysis dependent chronic kidney disease and hypertension– may fall within the criteria of Application Note 1(A)(ii)(I) which provides that an extraordinary and compelling reason exists if the defendant is

> (I) suffering from a serious physical or medical condition, . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13 cmt. n. 1(A)(ii)(I); (doc. 96, p. 4-5).

Based on updated guidance from the Centers for Disease Control and Prevention,[5] the United States concedes that during the Covid-19 pandemic, Spinner is eligible for compassionate release consideration (doc. 101, p. 13). The United States explains that an inmate's chronic medical condition, identified by the CDC as elevating the inmate's risk of serious illness from Covid-19, reasonably may be found to be "serious" and to "substantially diminish[ ] the ability" of the inmate to provide self-care in the prison environment, even if the condition would not be an "extraordinary and compelling reason" without the risk of Covid-19 (Id., p. 12).

IV. <u>18 U.S.C. § 3553(a)</u>

---

[4] Subparagraph (1)(B) provides for consideration of compassionate release if "[i]he defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned[.]"   Since Spinner is 37 years old, subparagraph (1)(B) cannot apply to him.

[5] See Centers for Disease Control and Prevention, People with Certain Medical Conditions, available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medicalconditions. html (last updated December 29, 2020) ("Having chronic kidney disease of any stage increases your risk for severe illness from COVID-19.").

However, even if Spinner met his burden to show entitlement for compassionate release consideration based upon extraordinary and compelling reasons, the Court may grant early release only "after considering the [applicable] factors set forth in 18 U.S.C. § 3553(a)." 18 U.S.C. § 3582(c)(1)(A). The United States argues that Spinner's sentence remains appropriate because it meets the goals of 18 U.S.C. § 3553(a)(1), (a)(2)(A), and a(2)(C). The United States points out the seriousness of Spinner's offense. Specifically, discharging a firearm from a vehicle at another vehicle. And also points out his prior convictions for breaking into a vehicle and receiving stolen property.

Consideration of the relevant factors do not weigh in favor of granting his motion. The Court has considered Spinner's history and characteristics and acknowledges that his criminal history category was II. However, the Court has also considered the nature and circumstances of his offense. Specifically, facilitating an armed robbery where store employees were held at gunpoint and his act of discharging a firearm in the direction of another vehicle while fleeing the scene of the armed robbery . His conduct demonstrates a lack of concern for the safety of the public and lack of respect for the law. Moreover, the record indicates that Spinner committed his offense after he was diagnosed with chronic kidney disease and possibly while receiving dialysis. Thus, his chronic medical condition does not appear to impede his potential for further crimes.

Spinner was arrested March 22, 2018. An order of detention was entered March 30, 2018 (doc. 24). He was sentenced August 3, 2018. Spinner has served approximately 34 months of his 120 month and 1-day sentence, or approximately 25%.[6] His release date is September 9,

---

[6] The Policy Statement indicates that when release has been granted, defendants have served a longer percentage of their sentence. See 18 U.S.C. § 3582(c)(1)(B) (potential for compassionate release where the defendant is at least 70 years of age and has served at least 30 years in prison); U.S.S.G. 1B1.13, cmt. 1(B) (possible compassionate release where the defendant is at least 65 years old; experiencing a serious deterioration in physical or mental health because of the aging

2026.  Allowing a reduction of sentence to approximately 25% of the total sentence, would not meet the need for the sentence imposed to "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense", or to adequately deter criminal conduct and "protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(1) and (a)(2)(A), (B), & (C).  Therefore, Spinner's motion is due to be denied.

      V. Spinner's allegations regarding conditions at FMC Springfield

      Spinner wrote the Court that he had been diagnosed with Covid-19 but was not receiving any treatment despite his multiple symptoms (doc. 97).  He also wrote that prison staff were not taking adequate precautions to protect inmates from the Covid-19 pandemic (Id.). To the extent that Spinner's letter could be construed as an attempt to raise a constitutional claim against the Warden and staff for violation of his constitutional rights, this Court lacks jurisdiction. Such claims must be brought in the district court in the district where the Warden and staff reside or are employed.  See Cosby v. United States, 2009 WL 2821943 (M.D. Ga. 2009) ("Moreover, the FMC–Carswell defendants reside, and are employed, in Fort Worth, Texas, which is in the Northern District of Texas. Therefore, plaintiff's claims against these defendants may not be pursued in this Court because this Court lacks personal jurisdiction over them and venue is improper.") (citations omitted); Saleh v. Florida, No. 3:17-CV-1465-J-34PDB, 2018 WL 2976049, at *8 (M.D. Fla. May 23, 2018), report and recommendation adopted, No. 3:17-CV-1465-J-34PDB, 2018 WL 2971045 (M.D. Fla. June 13, 2018) (. . .  to the extent Saleh attempts to bring § 1983 and Bivens claims against defendants who are domiciled in Nevada and acted only in Nevada, dismissal of the claims is warranted because the claims are frivolous given the evident absence of personal jurisdiction over them."); Venkataram v. Bureau of Prisons, 2018

---

process; and has served at least 10 years or 75 percent of his or her term of imprisonment,

9

WL 1273078 (S.D. Fla. 2018) (noting that the district court had dismissed Venkataram's claims regarding dietary accommodations during his incarceration at FCI Fort Dix in New Jersey for lack of personal jurisdiction); see also Hopkins v. Osborn, 2019 WL 1099030 (D. Conn. 2019) (dismissing claims against a federal judge and DEA agents in Arizona for lack of personal jurisdiction).

**DONE** and **ORDERED** this 26th day of January 2021.

**s / Kristi K. DuBose**
**KRISTI K. DuBOSE**
**CHIEF UNITED STATES DISTRICT JUDGE**

---

whichever is less.).